THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

GREENSTAR TECHNOLOGIES, LLC AND
PACIFIC CONTROLS, INC.,

Plaintiffs,

v.

JONES LANG LASALLE AMERICAS, INC.,

Defendant.

CIVIL ACTION NO.: 3:20-cv-07900
(GC-TJB)

---

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT**

---

David C. Dreifuss
(Attorney ID No. 15191977)
DDreifuss@dbplawfirm.com
**DREIFUSS, BONACCI & PARKER, PC**
26 Columbia Turnpike
Florham Park, New Jersey 07932
(973) 514-1414

*Attorneys for Plaintiffs
Greenstar Technologies LLC. And Pacific Controls,
Inc.*

*On the Brief:*
David C. Dreifuss, Esq.
Paul H. Mandal, Esq.
Margaret A. Palmeri, Esq.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................... 1

RELEVANT FACTS .................................................................................................. 1

LEGAL ARGUMENT................................................................................................. 4

  A. STANDARD OF REVIEW.................................................................................. 4

  B. JLL COMMITED MATERIAL BREACHES OF THE PCI AGREEMENT...................... 7

    1. In addition, JLL has not established that the formation of the Greenstar Agreement constitutes a Novation ................................................................................... 7

    2. PCI has pled sufficient facts as to breach of the PCI Agreement..................... 11

  C. JLL COMMITED MATERIAL BREACHES OF THE GREENSTAR AGREEMENT .... 17

  D. ACCOUNTINGS UNDER THE GREENSTAR AND PCI AGREEMENTS ARE WARRANTED ................................................................................................. 20

  E. GOOD FAITH AND FAIR DEALING ARE SUBSUMED INTO BREACH OF CONTRACT CLAIM ........................................................................................ 24

  F.  SPECIFIC PERFORMANCE............................................................................. 25

  G. BAD FAITH BREACH OF CONTRACT/FRAUD ............................................... 26

CONCLUSION....................................................................................................... 28

## **TABLE OF AUTHORITIES**

**Cases**

3Com Corp. v. Elecs. Recovery Specialists, Inc., 104 F. Supp. 2d 932, 943 (N.D. Ill. 2000) ..... 27

ABM Marking, Inc. v. Zanasi S.R.L., 353 F.3d 541 (2003) ......................................................... 22

Allied Waste Transp., Inc. v. John Sexton Sand & Gravel Corp., 13 C 1029, 2016 WL 3443897, at 20 (N.D. Ill. June 23, 2016) ................................................................................................... 19

Ansonia Properties, LLC v. Vasilj, 2015 IL App (1st) 133846-U, ¶ 23, as modified (June 4, 2015) ...................................................................................................................................... 25

Astra Capital, LLC v. BCI Aircraft Leasing, Inc., 17 C 6431, 2019 WL 2248526, at *3 (N.D. Ill. May 24, 2019) ...................................................................................................................... 9

Baker v. Puffer, 299 Ill. 486, 490 (1921) ................................................................................... 25

Banco Del Estado v. Navistar Int'l Transp. Corp., 942 F.Supp. 1176, 1179 (N.D.Ill.1996) ........ 24

Bank of Illinois in Mt. Vernon v. Bill's King City Stationery, Inc., 198 Ill. App. 3d at 436–37.. 26

Bank One, Springfield v. Roscetti, 723 N.E.2d 755,763 (Ill. Ct.App. 1999) .............................. 16

Batteast Const. Co. v. Pub. Bldg. Comm'n of Chicago, 195 F. Supp. 2d 1045 (N.D. Ill. 2001).. 18

Batteast Const. Co. v. Pub. Bldg. Comm'n of Chicago, 195 F. Supp. 2d 1045, 1051 (N.D. Ill. 2001) ...................................................................................................................................... 24

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ................................................................ 4

Beraha v. Baxter Health Care Corp., 956 F.2d 1436, 1443–45 (7th Cir.1992) ........................... 17

Billboard Publishing Company v. McCarahan 151 Ill. App. 227, 229 (Ill. App. Ct. 1909)......... 23

Burke v. N. Wabash Venture 08-CV-5330, 2010 WL 2330334 at *2 (N.D. Ill. June 9, 2010) ... 11

Carrico v. Delp, 141 Ill.App.3d 684, 690, 95 Ill.Dec. 880, 490 N.E.2d 972, 976 (1986) ............ 16

Cedar Park Cemetery Ass'n v. Village of Calumet Park, 398 Ill. 324, 335, 75 N.E.2d 874 (1947) .................................................................................................................. 14

Chemical Bank v. Paul, 244 Ill.App.3d 772, 783, 185 Ill.Dec. 302, 614 N.E.2d 436, 442 (1993) .................................................................................................................. 16

Cincinnati Ins. Co. v. Leighton, 403 F.3d 879, 887 (7th Cir. 2005) .................................................. 9

Cincinnati Ins. Co. v. Leighton, 403 F.3d 879, 889 (7th Cir. 2005) .................................................. 8

Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr., 2009 WL 1329217, at *6 (N.D. Ill. May 13, 2009).............................................................................................................. 24

City of Chicago v. Michigan Beach Housing Co-op, 297 Ill.App.3d 317, 326 (1st Dist. 1998).. 27

Clay Fin. LLC v. Mandell, 16 C 11571, 2018 WL 4682339, at *8 (N.D. Ill. Sept. 28, 2018)....... 7

Clay Fin. LLC v. Mandell, 16 C 11571, 2018 WL 4682339, at *9 (N.D. Ill. Sept. 28, 2018)....... 9

Conley v. Gibson, 355 U.S. 41 (1957) ....................................................................................... 4

Connick v. Suzuki Motor Co., Ltd., 174 Ill.2d 482, 496 (1997) ................................................... 27

Cox v. Doctor's Assocs., Inc., 245 Ill. App. 3d 186, 220 (1993) ................................................... 26

Dodd v. Rotterman, 330 Ill. 362, 370 (1928)............................................................................. 25

Elward v. Electrolux Home Products, Inc., 264 F. Supp. 3d 877, 887 (N.D. Ill. 2017), Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012) ................... 10

Facility Wizard Software Inc. v. Southeastern Technical Division, 647 F.Supp.2d 938 (N.D. Ill. 2019)........................................................................................................................ 11

Fidelity Nat'l Title Ins. Co. of N.Y. v. Westhaven Props. P'ship, 386 Ill. App. 3d 201, 2014 (2007) ............................................................................................................... 14

First Position, Inc. v. 3650, LLC, 2013 WL 3835976, at *1 (Ill.Cir.Ct.), Westmever v. Flvnn. 382 Ill. App. 3d 952, 955 (l^st Dist. 2008) ...................................................................... 6

First Position, Inc. v. 3650, LLC, 2013 WL 3835976, at 682 (Ill.Cir.Ct.) ...................................... 8

Gallagher v. Lenart, 226 Ill.2d 208, 233, 314 Ill.Dec. 133, 874 N.E.2d 43 (2007)...................... 14

Geinosky v. City of Chicago, 675 F.3d 743, 745 (7th Cir. 2012).................................................... 6

Greenbaum & Browne, Ltd. v. Braun, 88 Ill. App. 3d 210, 213 (1980)......................................... 8

Happy R Sec., LLC v. Agri-Sources, LLC, 988 N.E.2d 972, 981 (Ill.App.Ct. 2021).................. 25

Hayward v. Burke, 37 N.E. 846, 850 (Ill. 1894)............................................................................. 8

Hepp v. Ultra Green Energy Servs. LLC, No. 13 C 4692, 2014 WL 2154097, at *3 n.4 (N.D. Ill.

   May 22, 2014) .......................................................................................................................... 6

Hess v. Bresney, 784 F.3d 1154, 1158-59 (7th Cir. 2015) ............................................................ 7

Hickox v. Bell, 195 Ill. App. 3d 976, 989-990 (1990).................................................................. 13

Illinois Sterling, Inc. v. KDI Corp., 33 Ill.App.3d 666 (1975) .................................................... 26

In Bank of Illinois in Mt. Vernon v. Bill's King City Stationery, Inc., 198 Ill. App. 3d 434, 436–

   37 (1990) ................................................................................................................................. 26

In re Doyle, 144 Ill.2d 451, 468, 163 Ill.Dec. 515, 581 N.E.2d 669 (1991)................................ 14

Industrial Specialty Chems., Inc. v. Cummins Engine Co. Inc., 902 F.Supp. 805, 811

   (N.D.Ill.1995).......................................................................................................................... 24

International Capital Group v. Starrs, 2010 WL3307345 (N.D. Ill. Aug. 19, 2010)................... 11

Karraker v. Eddleman, 101 Ill. App. 23, 29 (Ill. App. Ct. 1902)................................................... 8

Kempner Mobile Electronics Inc. v. Southwestern Bell Mobile Systems, 428 F.3d 706 (7th Cir.

   2005).......................................................................................................................................... 23

Ladien v. Presence RHC Corp., 2017 IL App (1st) 152778-U, ¶ 22 (June 30, 2017)................. 25

LaScola v. U.S. Sprint Comm., 946 F.2d 559, 565 (7th Cir.1991)............................................... 24

Lenzi v. Morkin, 103 Ill.2d 290, 293, 82 Ill.Dec. 644, 469 N.E.2d 178 (1984).......................... 14

Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998) ............................................................ 6

Levey v. Concesionaria Vuela Compania de Aviacion, S.A.P.I. de C.V., 529 F. Supp. 3d 856, 865 (N.D. Ill. 2021) ................................................................................................................ 18

Liston v. King.com, Ltd., 254 F. Supp. 3d 989, 1004 (N.D. Ill. 2017) ........................................ 19

Mann v. Kemper Financial Companies, Inc., N.E.2d 317, 327 (Ill. App. Ct. 1st Dist. 1992)....... 21

Martindell v. Lake Shore National Bank, 15 Ill.2d 272, 286, 154 N.E.2d 683, 690 (1958)......... 16

Matthews v. Chi. Transit Auth., 2016 IL 117638, ¶ 77 ................................................................ 13

Mayr v. Nelson Chesman & Co., 195 Ill. App. 587, 589 (Ill. App. Ct. 1915).............................. 21

Melikhov v. Drab, No. 16 C 9332, 2017 WL 3234808 at *7 (N.D. Ill. July 31, 2017)............... 23

Miyano Mach. USA, Inc. v. Zonar, 1994 WL 233649, at *7 (N.D. Ill. May 23, 1994)............... 27

Morrow v. L.A. Goldschmidt Associates, Inc., 112 Ill.2d 87 (1986) ........................................... 26

Netterstrom v. Gallistel, 110 Ill. App. 352, 354 (Ill. App. Ct. 1903) ............................................ 8

Palakovic v. Wetzel, 854 F.3d 209, 219 (3d Cir. 2017) ................................................................. 4

People ex rel Hartigan v. Candy Club, 149 Ill.App.3d at 501, 103 Ill.Dec. at 169, 501 N.E.2d at 191 ................................................................................................................................ 21

Petri v. Gatlin, 997 F. Supp. 956, 965–66 (N.D. Ill. 1997).......................................................... 18

Phillips & Arnold, Inc. v. Frederick J. Borgsmiller, Inc., 462 N.E.2d 924, 928 (Ill. App. Ct. 1st Dist. 1984)..................................................................................................................... 8

Pielet v. Pielet, 978 N.E.2d 1000, 1014 (Ill. 2012)........................................................................ 9

Price v. Philip Morris, Inc., 219 Ill.2d 182, 269-70 (2005) ........................................................ 27

Ronald McDonald House Charities of Chicagoland v. Winning Charities Illinois, LLC 2013 WL 5907668 (N.D. Ill. Nov. 4, 2013) .......................................................................... 16

Salvator v. Admiral Merchants Motor Freight, 156 Ill.App.3d 930 (1987) ................................. 26

Seban v. Cargurus, Inc., No. 16 C 2531, 2016 WL 4709077, at *2 (N.D. Ill. Sept. 8, 2016) ........ 6

Sharpe v. Jefferson Distrib. Co., 1998 WL 786397, at *3 (N.D. Ill. Nov. 6, 1998) .................... 27

Skokin v. Blackman, Kallick and Co., 184 Ill.App.3d 873 (1989) ................................................ 26

Snap-On Inc. v. Ortiz, 1999 WL 592194, at *13 (N.D. Ill. Aug. 3, 1999) .................................... 24

Sokolova v. United Airlines, Inc., 18-CV-02576, 2019 WL 1572555, at *3 (N.D. Ill. Apr. 11, 2019) ................................................................................................................................................ 19

Stuart Park Assocs. Ltd. P'ship v. Ameritech Pension Tr., 846 F. Supp. 701, 714 (N.D. Ill. 1994) ............................................................................................................................................... 24

Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008) ...................................................... 6

Thompson v. Gordon, 241 Ill.2d 428, 441, 349 Ill.Dec. 936, 948 N.E.2d 39 (2011) ................... 14

Transp. & Transit Assocs., Inc. v. Morrison Knudsen Corp., 255 F.3d 397, 401 (7th Cir. 2001) 19

Twombly and Ashcroft v. Iqbal, 556 U.S. 662 (2009) .................................................................. 4

Typpi v. PNC Bank, Nat'l Ass'n, 2014 WL 296035, at *3 (N.D. Ill. Jan. 27, 2014) ................... 24

U.S. Fid. & Guar. Co. v. Klein Corp., 558 N.E.2d 1047 (Ill. App. Ct. 1989) ............................... 9

Utica Mut. Ins. Co. v. Vigo Coal Co., 393 F.3d 707, 712 (7th Cir. 2004) .................................... 8

Wallace v. Prudential Insurance Co., 12 Ill.App.3d 623, 629–30 (1973) ..................................... 26

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 4

Fed. R. Civ. P. 8(a)(2) ................................................................................................................ 4, 6

Fed. R. Civ. P. 9(b) ...................................................................................................................... 18

Fed.Rule Civ.Proc. 12(b)(6), 28 U.S.C.A ................................................................................... 18

**Treatises**

20 Williston & Lord, supra, § 55:20, at 87; § 55:27, at 114 ......................................................... 14

American and English Encyclopedia of Law, 1st Ed., Vol. 16, pp. 862-7 ..................................... 8

Restatement (Second) of Contracts § 355 (1977) ......................................................................... 26

**PRELIMINARY STATEMENT**

Plaintiffs Pacific Controls, Inc. ("PCI") and Greenstar Technologies, LLC ("Greenstar") submit the within brief in support of their opposition to Defendant Jones Lang LaSalle Americas, Inc.'s ("JLL" or "Defendant") motion to dismiss. JLL has distorted Plaintiffs' Complaint in terms of what it pleads such that the initial Complaint should not be dismissed.   However, Plaintiffs have also filed a First Amended Complaint, as permitted by F.R.C.P. 15(a)(1)(B), within 21 days of the filing of Defendant's motion so as to make its factual and legal allegations even more clearly undeserving of dismissal.  It is submitted that a review of the allegations in the Complaint and/or First Amended Complaint should result in a complete denial of JLL's motion, especially in light of the standard applicable to motions to dismiss.  For the Court's ease of review, the Complaint and Amended Complaint are attached hereto as Exhibit A and Exhibit B, respectively.

**RELEVANT FACTS**

The facts set forth herein are facts from the Complaint (referred to as "Comp."), which was first filed in state court and removed by JLL to this Court; First Amended Complaint (referred to as "Am.Comp.") and/or the contracts attached to the motion to dismiss as Exhibits A and B.  This is not an exhaustive review of every fact in the Complaint and Amended Complaint and additional facts are also addressed in the Argument portion of this brief.

Both of the plaintiffs, PCI and Greenstar, are and during all relevant times were engaged in providing cloud technology services and materials to customers, including a platform, software and related services. (Comp. ¶ 4, Am. Comp. ¶7).  In or about 2011, plaintiff PCI and defendant JLL entered into an agreement.  (Comp. ¶5; Am. Comp. ¶8).  The Agreement between PCI and JLL ("PCI Agreement") contemplated that JLL would aggressively market PCI's services (Comp.

1

¶7, Am. Comp. ¶10) and products (Am. Comp. ¶10) to JLL's customers.  As one example, Exhibit C incorporated into that Agreement (Exhibit A to JLL papers) indicates that PCI's products and services would be marketed to JLL's clients in industries involving data centers, general offices, hotels, manufacturing, retail, hospitals, warehouse and labs and/or to clients with spaces ranging from 1000 square feet to 10,000,000 square feet. (Comp. ¶7, Am.Comp. ¶10)  Further, the PCI Agreement, as quoted in greater detail in the First Amended Complaint (Am. Comp. ¶¶10-14), expressly and/or impliedly stated that JLL would be marketing PCI's Platform and Software to all of its clients.  (Am. Comp. ¶15)  Consistent with the PCI Agreement, PCI provided JLL with a business plan in 2012 to which no objection was made at a point where a reasonable person would have objected if he/she had any objection. (Comp. ¶¶10, 11; Am. Comp. ¶¶16,17).  Based upon the growth potential reflected in the business plan and/or the terms of the PCI Agreement, PCI expended substantial sums making certain that it could comply with what it had agreed to. (Comp. ¶¶12,13; Am. Comp. ¶¶18,19) PCI was unaware that JLL had intentionally not marketed its Platform and/or its Software as per the PCI Agreement and/or business plan when it transferred the Software and/or Platform to Greenstar and it was also unaware that JLL had planned on and/or started integration of PCI's Platform with others of its technology offerings at that time. (Am.Comp. ¶¶21,22). As a result of said actions and/or lack thereof by JLL, PCI incurred substantial losses. (Comp. ¶15; Am. Comp. ¶¶23, 24)

Greenstar and JLL then entered into an agreement. ("Greenstar Agreement").  That Agreement included numerous provisions which JLL breached.  They include failing to notify Greenstar on a monthly basis of the net proceeds from the platform and software; failing to account for substantial revenues derived from the integration of the IntelliCommand Platform with other technology offerings of JLL; failing to schedule quarterly meetings; failing to submit a personnel

2

plan; failing to pay the fees with respect to the licensing and agreements related to the Software and the Platform; not providing an annual operating budget and failing to treat Greenstar honestly and fairly as expressly provided in the Greenstar Agreement. (Comp. ¶¶17-33; Am.Comp. ¶¶17-42)

Given the relationship first of PCI with JLL and then of Greenstar with JLL, in that JLL controlled the relationships with its customers and ultimately (after Greenstar became involved) controlled the employees directly involved with the Platform and Software, first PCI and thereafter Greenstar had to rely heavily on JLL's good faith and fair and honest dealings as it had expressly agreed to in the agreements and which provisions it breached. (Comp. ¶¶34-38; Am. Comp. ¶¶42-47)

Both pleadings address in detail documents and facts which lead to the conclusion that JLL planned a course of conduct for years so that the Platform, workers, materials, software, codes, etc. would be within its exclusive control and to "steal" same away from first PCI and then Greenstar. (Comp. ¶¶40-53; Am. Comp. ¶¶49-62). As set forth in both pleadings:

> Such efforts included first getting PCI to spend tens of millions of dollars to render the technology compatible with JLL's technology; to then not market it as agreed so that PCI would lose substantial sums on its significant investment; then to agree to take on the PCI personnel involved with it and enter into an agreement whereby it gained a 65% interest in IntelliCommand and the related platform; then to keep Greenstar "in the dark" as to what JLL was doing with the technology by not conducting Advisory Committee meetings, advising Greenstar who were the members of the IMT and/or providing monthly reports; then to advise Greenstar that notwithstanding the latest reports IntelliCommand was losing money; then to offer to buy the remaining 35% interest for nothing while not advising Greenstar that JLL was investing a substantial sum into technology and/or that it was forming a new technology company. (Comp. ¶53; Am. Comp. ¶62)

Both pleadings also indicate that the breaches of the PCI Agreement include not marketing as agreed and not treating PCI fairly as agreed (Comp. ¶60; Am. Comp. ¶69) and that the breaches

damaged PCI. (Comp. ¶61; Am. Comp. ¶71)   The Fifth and Sixth Counts of both pleadings likewise address the breaches and damages as to Greenstar.

It is respectfully submitted that the Complaint and First Amended Complaint include detailed allegations of breaches and improprieties on the part of JLL that go far beyond the need for notice pleadings and that, assuming that they are true as this Court is obligated to do at this stage, they support the stated claims for relief.

## LEGAL ARGUMENT

### A. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) specifies that a civil complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P.* 8(a)(2). Such a statement "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Palakovic v. Wetzel*, 854 *F.3d* 209, 219 (3d Cir. 2017) (second alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 *U.S.* 544, 555 (2007)). A defendant contending that a complaint has not met this requirement may seek dismissal for "failure to state a claim upon which relief can be granted." *Fed. R. Civ. P.* 12(b)(6). Interpreting the interplay of these two provisions, the Supreme Court held in *Conley v. Gibson*, 355 *U.S.* 41 (1957), that "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46.

The Supreme Court subsequently revisited its interpretation of Rule 8(a)(2) in *Twombly and Ashcroft v. Iqbal*, 556 *U.S.* 662 (2009). In these cases, the Court "retired" *Conley's* rule that courts could grant a motion to dismiss for failure to state a claim only if it was beyond doubt the

plaintiff could prove "no set of facts" that would entitle it to relief. *Twombly*, 550 *U.S.* at 561-63; *Iqbal*, 556 *U.S.* at 670. Instead, the Court explained that to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 *U.S.* at 678 (quoting *Twombly*, 550 *U.S.* at 570). Such plausibility exists if the facts alleged in the complaint allow for "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; see *Twombly*, 550 *U.S.* at 556.

To meet this plausibility standard, the complaint's factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 *U.S.* at 555. But "[a]sking for plausible grounds to infer [unlawful activity] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [such activity]." *Id.* at 556. The facts alleged need not be "detailed," but a complaint must provide more than mere "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" without "further factual enhancement[s]." *Iqbal*, 556 *U.S.* at 678 (first alteration in original); *Twombly*, 550 *U.S.* at 555. The Court explained that making this plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 *U.S.* at 679.

The Court noted that the plaintiff was not required to show he was likely to prove his case: "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 *U.S.* at 556. The touchstone, both before and after *Twombly* and *Iqbal*, is whether the complaint " 'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Id.* at 555 (second alteration in original) (quoting *Conley*, 355 *U.S.* at 47); id. at 565 n.10 (differentiating

between an acceptable complaint with enough factual information that the defendant "would know what to answer" from an impermissible conclusory complaint affording the defendant "little idea where to begin").

Since the agreements involved here provide that Illinois law applies, the standard in Illinoi is that "Dismissal is warranted when, after considering the pleadings, affidavits, and supporting documents in a light most favorable to the nonmoving party, it is clearly apparent that no set of facts could be proven which would enable the plaintiff to recover." *First Position, Inc. v. 3650, LLC*, 2013 *WL* 3835976, at *1 (Ill.Cir.Ct.) *quoting Westmeyer v. Flynn*. 382 *Ill. App. 3d* 952, 955 (1st Dist. 2008).

If the factual content of issues as to a complaint concerns an affirmative defense, rather than the elements of plaintiffs' claims, the documents are likely beyond the scope of a court's inquiry at the pleading stage. *Seban v. Cargurus, Inc.*, No. 16 C 2531, 2016 *WL* 4709077, at *2 (N.D. Ill. Sept. 8, 2016) (citing *Geinosky v. City of Chicago*, 675 *F.3d* 743, 745 (7th Cir. 2012); *Levenstein v. Salafsky*, 164 *F.3d* 345, 347 (7th Cir. 1998); *Hepp v. Ultra Green Energy Servs. LLC*, No. 13 C 4692, 2014 *WL* 2154097, at *3 n.4 (N.D. Ill. May 22, 2014)). *Elward v. Electrolux Home Products, Inc.*, 264 *F. Supp. 3d* 877, 886 (N.D. Ill. 2017)

Under the federal notice pleading standards, a complaint "need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Elward v. Electrolux Home Products, Inc.*, 264 *F. Supp. 3d* 877, 884–85 (N.D. Ill. 2017) citing *Tamayo v. Blagojevich*, 526 *F.3d* 1074, 1081 (7th Cir. 2008) *see also Fed. R. Civ. P.* 8(a)(2). It should be clear that both the Complaint and the Amended Complaint comply with the federal and Illinois standards and that under either standard, the motion to dismiss should be denied in its entirety.

## B. JLL COMMITED MATERIAL BREACHES OF THE PCI AGREEMENT

JLL breached the PCI Agreement and the Greenstar Agreement resulting in significant damages to the non-breaching parties. To prevail on a breach of contract claim under Illinois law, a plaintiff must prove the following: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Hess v. Bresney,* 784 *F.3d* 1154, 1158-59 (7th Cir. 2015); see also *Clay Fin. LLC v. Mandell,* 16 C 11571, 2018 *WL* 4682339, at *8 (N.D. Ill. Sept. 28, 2018). Here, neither party disputes that there were valid and enforceable contracts but, again, the standard is whether the Complaint and/or Amended Complaint plead that there were contracts and both do so plead. As to performance by the plaintiffs, that is expressly pled in the Amended Complaint. (Am. Comp. ¶¶19, 41) Breaches by JLL have been alleged in detail as to both agreements as set forth in the Statement of Facts, infra, and in detail in the Complaint and Amended Complaint. The pleadings, throughout the general allegations and in the specific counts, also allege resultant injury to PCI and/or Greenstar. As a result, it should be clear that both pleadings have satisfied the requirements of Illinois law as to alleged breaches of contract.

### 1. In addition, JLL has not established that the formation of the Greenstar Agreement constitutes a Novation

JLL's arguments regarding novation are improper and premature. The execution of the Greenstar Agreement does not, on its face, constitute a novation under Illinois law as the parties and intent of the parties differ. JLL defrauded the Plaintiffs prior to and after the Greenstar Agreement was executed and cannot be permitted to benefit from its unlawful actions. Furthermore, JLL failed to prove all the elements of a novation under Illinois law by a preponderance of the evidence and therefore its motion to dismiss must be denied.

JLL fails to mention that, in Illinois, "the party asserting discharge or novation has the burden of proving novation by a preponderance of the evidence." *First Position, Inc. v. 3650, LLC*, 2013 *WL* 3835976, at 682 (Ill.Cir.Ct.) *citing Greenbaum & Browne, Ltd. v. Braun*, 88 *Ill. App. 3d* 210, 213 (1980). Further, the Court must consider that, when deciding a novation issue, novation is not easily presumed. It must clearly appear before the court will recognize it. *Netterstrom v. Gallistel, 110 Ill. App. 352,* 354 (Ill. App. Ct. 1903) see also *Hayward v. Burke*, 37 *N.E.* 846, 850 (Ill. 1894).

JLL cites to the four elements of a novation as: "[1] a previous, valid obligation; [2] a subsequent agreement of all the parties to the new contract; [3] the extinguishment of the old contract; and [4] the validity of the new contract." *Cincinnati Ins. Co. v. Leighton*, 403 *F.3d* 879, 889 (7th Cir. 2005) (quoting *Phillips & Arnold, Inc. v. Frederick J. Borgsmiller, Inc.*, 462 *N.E.2d* 924, 928 (Ill. App. Ct. 1st Dist. 1984)). It should be noted that in the *Cincinnati* case, the Court ruled that when considering evidence to support a claim of novation, the courts must be mindful that any proof of a novation must be clear. *Id.* See also *Utica Mut. Ins. Co. v. Vigo Coal Co.*, 393 *F.3d* 707, 712 (7th Cir. 2004).

Here, PCI was not a party to the Greenstar Agreement. "All the parties, not only to the new contract, but also to the one for which the new contract is substituted, must consent to the novation; the parties to the original contract must consent in order to have that extinguished, and the parties to the new contract in order to have a valid obligation substituted for the old." *Karraker v. Eddleman*, 101 *Ill. App.* 23, 29 (Ill. App. Ct. 1902) quoting the American and English Encyclopedia of Law, 1st Ed., Vol. 16, pp. 862-7.

Further the obligee must assent to the substitution and agree to release the obligor for a novation to occur. *Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 887 (7th Cir. 2005). Novation requires "a subsequent agreement of all the parties to the new contract". *Clay Fin. LLC v. Mandell*, 16 *C* 11571, 2018 *WL* 4682339, at *9 (N.D. Ill. Sept. 28, 2018)

Here, there is no evidence submitted that PCI agreed to release JLL; that PCI and Greenstar are one and the same entities; that PCI and Greenstar have the same ownership and/or that PCI agreed to a full extinguishment of all terms of the PCI Agreement. Similar to this case, the United States District Court for the Northern District of Illinois denied defendants' motion for summary judgement as they failed to cite any authority to support their argument that any later agreement regarding the same subject matter constitutes a novation. It ruled that such was "inconsistent with the principle that courts do not presume the parties' intent to form a novation" *Astra Capital, LLC v. BCI Aircraft Leasing, Inc.*, 17 *C* 6431, 2019 *WL* 2248526, at *3 (N.D. Ill. May 24, 2019). See also *Pielet v. Pielet*, 978 *N.E.2d* 1000, 1014 (Ill. 2012) (Supreme Court of Illinois concurred with lower court ruling that an issue of fact existed as to whether a novation occurred regarding two agreements made by the successor to the first agreement). Additionally, the Court denied the defendants' motion as an issue of fact existed as the parties disputed whether the second agreement covered the same subject matter as the first agreement. *Astra Capital, LLC v. BCI Aircraft Leasing, Inc.,* 17 *C* 6431, 2019 *WL* 2248526, at *3 (N.D. Ill. May 24, 2019).

Additionally, it should be noted that Illinois courts have held that novation is an affirmative defense which must be specifically pled, *U.S. Fid. & Guar. Co. v. Klein Corp.*, 558 *N.E.2d* 1047 (Ill. App. Ct. 1989) and that a dismissal of the complaint is improper particularly when considering that a, "Dismissal based upon affirmative defenses is rare because "these defenses typically turn on facts not before the court at [this] stage." *Elward v. Electrolux Home Products, Inc.,* 264 *F.*

9

*Supp. 3d* 877, 887 (N.D. Ill. 2017) *Brownmark Films, LLC v. Comedy Partners*, 682 *F.3d* 687, 690 (7th Cir. 2012).

When applying the law of Illinois regarding novation to the facts of this case, as indicated above it is clear that JLL's motion must be denied. JLL incorrectly argues that a novation occurred when the Greenstar Agreement was executed. Here, JLL ignores the fact that there are issues as to the first three elements of the novation test. Although the Greenstar Agreement was subsequent to the PCI Agreement, the parties were not the same. Further, the PCI Agreement was signed in 2011 by the executive chairman/owner of the company Dilip Rahulan. (JLL motion papers, Exhibit A) The Greenstar Agreement was signed in 2016 by the director/owner of the company Beena Abraham (JLL motion papers, Exhibit B) Further, the PCI Agreement establishes PCI as the developer of Software and a Platform and gives significant details as to the services and products PCI planned to provide to JLL to market to its customers. On the contrary, Greenstar was not involved in the creation of the Software and Platform, unlike PCI. The 2016 Greenstar Agreement focuses on the creation and management of IMT, IntelliCommand and various reports to and the involvement of Greenstar in a different capacity than PCI was involved pursuant to the PCI Agreement. As noted above, there is also nothing indicating an intent by PCI to release JLL and/or to discharge JLL as to all obligations under the PCI Agreement.

Furthermore, JLL breached the PCI Agreement by failing to market its products as contemplated by the Agreement in multiple locations and in multiple respects and JLL withheld significant information from PCI as to its efforts with PCI's platform and other technology offerings of JLL. Unfortunately, PCI was not aware of JLL's breaches and/or fraudulent activities until after the Greenstar Agreement was executed. Once the Greenstar Agreement was executed, JLL breached that Agreement and defrauded Greenstar. As JLL breached both Agreements and

defrauded the Plaintiffs, it would be unjust to permit JLL to benefit from its actions without permitting Plaintiffs an opportunity to prove their case. The Plaintiffs anticipate that discovery will reveal more evidence with respect to JLL's actions against PCI and PCI should not be denied the opportunity to engage in discovery and have its day in court.

**2. PCI has pled sufficient facts as to breach of the PCI Agreement**

It is respectfully submitted that Defendant's reliance on the unpublished opinion of *Burke v. N. Wabash Venture* 08-CV-5330, 2010 *WL* 2330334 at \*2 (N.D. Ill. June 9, 2010) is misplaced as numerous Illinois cases hold that it is not necessary for a Plaintiff to identify a specific contract provision that was breached in order to plead breach of contract under a federal pleading standard.

In *Facility Wizard Software Inc. v. Southeastern Technical Division*, 647 *F.Supp.2d* 938 (N.D. Ill. 2019), the Court expressly refused to dismiss the Plaintiff's breach of contract claims where, as here, the request to dismiss was based upon the fact that the claim did not specifically set forth the provision of the contract that the Plaintiff claimed was breached. In fact the *Facility Wizard* court stated that:

> at the motion to dismiss stage, a court is not testing the merits of the claim, but the sufficiency of the allegations… In the instant case, FWS specifically alleges facts that put CMHA on notice that its use of FWS's trade secrets and confidential information was unjustified and exceeded the terms of the License Agreement. *Id.* at 950.

While the *Facility Wizard* Court did mention that the Defendant did not ask for a more definitive statement related to the breach of contract claims and Defendant simply denied the allegations, same is irrelevant as the Defendant can do so in this situation.

Similarly, in *International Capital Group v. Starrs*, 2010 *WL*3307345 (N.D. Ill. Aug. 19, 2010), the Court indicated that the plaintiff is not required to identify a specific contract provision

that was breached in order to plead breach of contract under the federal pleading standard, holding that:

> (W)e agree with ICG that a plaintiff is not required to identify a specific contract provision that was breached in order to plead breach of contract under the federal pleading standard, but a plaintiff must still plead enough facts to establish a breach, for example, the existence of some unsatisfied obligation.

While the *International Capital* Court determined that the Plaintiff's complaint set forth some unsatisfied obligation, and allowed the Plaintiff to amend its complaint, here, Plaintiffs in this matter have set forth the manner in which JLL breached the contract.

The following paragraphs of the Complaint include allegations as to the manner in which JLL breached terms of the PCI Agreement:

7. The PCI Agreement contemplated that JLL would aggressively market PCI's services to its customers. For example, it indicates that PCI was offering to provide its software, platform and services to JLL and its clients. It indicates that JLL desires the software, platform and services. As per Exhibit C thereto which was incorporated by reference, it was anticipated that PCI's software, platform and services would be marketed by JLL to clients in the following industries: Data Centers; General Offices; Hotels; Manufacturing; Retail; Hospitals; Warehouse and Labs. The PCI Agreement also contemplated that the client spaces would range from 1000 square feet to 10,000,000 square feet.

9. Pursuant to the PCI Agreement, JLL represented that it would maintain a relationship with PCI based upon fair and honest dealings at all times.

14. JLL's representations to PCI as to the market potential for PCI's software, platform and/or Services, made both before and after the PCI Agreement was executed, were either grossly negligent, intentionally false or JLL failed to market same to its customers as represented and contemplated in the PCI Agreement.

25. Notwithstanding said representations, JLL failed to treat either PCI or Greenstar fairly and apparently decided that its size would allow it to treat the much smaller companies unfairly and that it could do so with impunity.

36. As reflected by the various breaches of the PCI Agreement as set forth above, JLL did not treat PCI fairly.

37. As reflected by the various breaches of the PCI Agreement set forth above, JLL breached the implied covenant of good faith and fair dealing with respect to PCI.

38. As reflected by the various breaches of the Greenstar Agreement as set forth above, JLL did not treat Greenstar fairly.

42. That JLL had not marketed IntelliCommand to the extent contemplated was clear from the IMT meeting which occurred on December 2, 2016, which was the last such meeting of which Greenstar was advised.  At the December 2, 2016 IMT meeting, it was announced that "JLL leadership reaffirmed support for expansion of" IntelliCommand.  If JLL had been marketing IntelliCommand as contemplated in the PCI Agreement, there would have been no need for the JLL leadership to agree to expand IntelliCommand.

57. Said actions, individually and/or in combination, are clearly in breach of JLL's agreements to treat first PCI and then Greenstar fairly at all times and in all ways.

60. As set forth above, JLL breached the PCI Agreement in multiple respects, including but not limited to not marketing Intellicommand as agreed and not treating PCI fairly as agreed.

64. JLL, by its actions detailed above, breached the implied covenant of good faith and fair dealing as it relates to the PCI Agreement.  [emphasis added]

The Amended Complaint is even more specific, adding allegations with respect thereto to Paragraphs 10 – 15.  As set forth above, PCI has alleged adequate allegations to comport with Illinois law as to breaches of contract.

Moreover, Defendant's argument that the lack of an express contractual provision indicating that JLL would market PCI's software means that Plaintiffs cannot maintain a breach of contract complaint, flies in the face of both Illinois law and the terms of the contract and its exhibits. An Illinois court's primary goal is to ascertain and give effect to the intention of the parties at the time the contract was formed *Matthews v. Chi. Transit Auth.*, 2016 *IL* 117638, ¶ 77. Illinois courts determine the intention of the parties by considering the contract as a whole without resorting to extrinsic evidence. However, courts may resort to extrinsic evidence to explain an ambiguity in the contract. *Hickox v. Bell*, 195 *Ill. App. 3d* 976, 989-990 (1990).

In construing a contract, the primary goal is to ascertain and give effect to the intention of the parties at the time the contract was formed. *In re Doyle,* 144 Ill.2d 451, 468, 163 Ill.Dec. 515, 581 N.E.2d 669 (1991); *Lenzi v. Morkin,* 103 Ill.2d 290, 293, 82 Ill.Dec. 644, 469 N.E.2d 178 (1984); *Cedar Park Cemetery Ass'n v. Village of Calumet Park,* 398 Ill. 324, 335, 75 N.E.2d 874 (1947). Where no ambiguity exists, the intent of the parties at the time the contract was entered into must be ascertained from the language of the contract itself. *In re Doyle,* 144 Ill.2d at 468, 163 Ill.Dec. 515, 581 N.E.2d 669; *Lenzi,* 103 Ill.2d at 293, 82 Ill.Dec. 644, 469 N.E.2d 178; 20 Williston & Lord, *supra,* § 55:20, at 87; § 55:27, at 114. A contract must be construed as a whole, viewing particular terms or provisions in the context of the entire agreement. *Thompson v. Gordon,* 241 Ill.2d 428, 441, 349 Ill.Dec. 936, 948 N.E.2d 39 (2011); *Gallagher v. Lenart,* 226 Ill.2d 208, 233, 314 Ill.Dec. 133, 874 N.E.2d 43 (2007); 20 Williston & Lord, *supra,* § 55:20, at 87; § 55:27, at 114. Therefore, the parties' intent will not be ascertained by viewing a clause or provision in isolation. *Thompson,* 241 Ill.2d at 441, 349 Ill.Dec. 936, 948 N.E.2d 39; *Gallagher,* 226 Ill.2d at 233, 314 Ill.Dec. 133, 874 N.E.2d 43.

A court may not interpret a contract in a way that would nullify or render provisions meaningless *Fidelity Nat'l Title Ins. Co. of N.Y. v. Westhaven Props. P'ship,* 386 *Ill. App. 3d* 201, 2014 (2007)

In the absence of an ambiguity, the parties' intent is ascertained solely from the words of the contract itself, and we will not interpret a contract in a manner that would nullify or render provisions meaningless or that is contrary to the plain and obvious meaning of the language used. *Thakral,* 156 Ill.App.3d at 854, 109 Ill.Dec. 111, 509 N.E.2d 772; *Regency Commercial Associates, LLC,* 373 Ill.App.3d at 277, 311 Ill.Dec. 636, 869 N.E.2d 310; *Fidelity Nat'l Title Ins. Co. of N.Y. v. Westhaven Props. P'ship,* 386 Ill. App. 3d 201, 2014 (2007)

The PCI Agreement includes provisions as to JLL's clients, without any limitation thereon. For example, it provides that PCI shall provide the Software, Platform and Services to JLL "and its clients" (JLL motion papers, Exhibit A, page 1); that JLL "desires to secure the Software, Platform and the Services by PCI" for its clients' installation sites (*Id.*) and "The parties agree that PCI will provide the Services to JLL clients . . . ." (*Id.* at Section 2.3) As set forth in Paragraphs 7 and 10 of the Complaint and First Amended Complaint, respectively, the PCI Agreement expressly

provides that Exhibit C was incorporated by reference and Exhibit C addresses the marketing of PCI's Platform and Software to JLL's clients in the industries of Data Centers, General Offices, Hotels, Manufacturing; Retail; Hospitals, Warehouse and Labs and also contemplates same being marketed in connection with spaces ranging from 1,000 square feet to 10,000,000 square feet as well as with volumes of buildings ranging between 100 and more than 500. Again, the issue now is not whether those types of provisions are conclusive, but rather whether the intent of the parties as reflected in the PCI Agreement contemplates that JLL would market PCI's Platform and Software to its clients. Succinctly stated, that is precisely what the Agreement is about. If JLL was not to market the Platform and Software to its clients, what was the consideration for PCI entering into the Agreement and/or continuing to expend funds and comply with the Agreement? Why would the Agreement have so many references to JLL's clients? There would be no consideration and no reason for those references.

Consistent therewith, as set forth in Paragraph 12 of the First Amended Complaint, Section 6 of the PCI Agreement provides that "During the term of this Agreement, PCI shall provide to JLL and its clients . . . ." That means that PCI shall provide same to JLL's clients, not some of the clients, and the only way for that to occur as per the PCI Agreement was for JLL to get work orders from its clients which it could only obtain if the clients were aware of the Platform and Software as a result of JLL's marketing of same.

Additionally, Exhibit H to the Agreement provides a mechanism for the issuance of customer satisfaction surveys. Why would there be a requirement that these surveys be issued if there was no obligation for JLL to market these products to its customers? As Illinois caselaw provides that the Court cannot ignore these provisions of the contract, it is respectfully submitted that the breach of contract claims cannot be dismissed.

Additionally, while the Defendant attempts to minimize Plaintiffs' claims related to JLL's breach of the implied covenant of good faith and fair dealing, Illinois law provides that every contract implies good faith and fair dealing between the parties to it. *Bank One, Springfield v. Roscetti*, 723 *N.E.2d* 755,763 (Ill. Ct.App. 1999), citing *Martindell v. Lake Shore National Bank*, 15 *Ill.2d* 272, 286, 154 *N.E.2d* 683, 690 (1958). Moreover, good faith requires the party vested with contractual discretion to exercise it reasonably, and it may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties. *Id.* citing *Carrico v. Delp*, 141 *Ill.App.3d* 684, 690, 95 *Ill.Dec.* 880, 490 *N.E.2d* 972, 976 (1986); see also *Chemical Bank v. Paul*, 244 *Ill.App.3*d 772, 783, 185 *Ill.Dec.* 302, 614 *N.E.2d* 436, 442 (1993) (creditor had considerable discretion in use and application of disbursed funds and did not exercise the discretion reasonably). In this case, the implied covenant of good faith and fair dealing is even more important in that JLL had control of the marketing, collection of funds, and ultimately over the Platform and Software.

Further, as set forth in the First Amended Complaint (e.g., Am. Comp. ¶ 13), here there is also an express provision that JLL's relationship with suppliers, such as PCI, "are based on the principle of fair and honest dealings at all times and in all ways." (See also JLL motion papers, Exhibit A, page 6, section 21). That is an express good faith provision included in both contracts.

Finally, Defendant's reliance on the unpublished *Ronald McDonald House Charities of Chicagoland v. Winning Charities Illinois, LLC* 2013 WL 5907668 (N.D. Ill. Nov. 4, 2013) opinion is also flawed. This opinion provides that:

> To establish a breach of the implied duty of good faith and fair dealing, a party must show "that the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable

expectations of the parties. *LaSalle Bank,* 588 F.Supp.2d at 857 (*citing Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1443–45 (7th Cir.1992)).

Again, in this case, JLL had the discretion as to how to market PCI's platform and software to its many customers and it exercised that discretion in bad faith, unreasonably or in a manner inconsistent with the reasonable expectations of the parties.

For the reasons, set forth above, it is respectfully submitted that PCI's breach of contract claims should not be dismissed.

## C. JLL COMMITED MATERIAL BREACHES OF THE GREENSTAR AGREEMENT

The initial Complaint expressly alleges that "JLL has repeatedly and materially breached the Greenstar Agreement in that the IMT, which is comprised solely of JLL employees, has failed to notify Greenstar on a monthly basis of the net proceeds as to IntelliCommand" (Initial Complaint, ¶26); "JLL has also breached the Greenstar Agreement in that it failed to schedule at least quarterly meetings of the Advisory Committee" (Id., ¶27); "JLL breached the Greenstar Agreement by failing to submit a Personnel Plan . . . ." (Id. , ¶28); "JLL breached the Greenstar Agreement by failing to assume responsibility for paying the ongoing fees with respect to the licenses and agreements related to the Software and Platform" (Id., ¶ 29); that JLL "breached the Greenstar Agreement in that no operating budget was submitted to the Greenstar member(s) of the Advisory Committee for review and approval " (Id., ¶30); "JLL breached the Greenstar Agreement by failing to, after a relatively short period of time, use the agreed upon format of 'IntelliCommand-Powered by Pacific Controls'" (Id., ¶31) and that JLL "breached its own requirements that it treat its suppliers 'based on the principle of fair and honest dealings at all times and in all ways.'" (Id., ¶33). The First Amended Complaint includes the same allegations but also indicates the precise provisions in the Greenstar Agreement that JLL thereby breached.

(Am. Comp., ¶¶ 35-42)

As indicated above, a breach of contract claim under Illinois law requires plaintiffs to plead the following elements: (1) the existence of a valid and enforceable contract, (2) plaintiff(s) substantial performance under the contract, (3) defendant(s) breach of the contract, and (4) damages resulting from the alleged breach of contract. *Levey v. Concesionaria Vuela Compania de Aviacion, S.A.P.I. de C.V.*, 529 *F. Supp. 3d* 856, 865 (N.D. Ill. 2021) While the initial Complaint alleged that "PCI expended substantial sums, energy and resources making certain that it was in a position to fully comply with its obligations pursuant to the PCI Agreement" (Comp. ¶13), the First Amended Complaint includes express allegations that Plaintiffs performed their contractual obligations. (Am. Comp. ¶¶19, 41)

The Northern District of Illinois ruled that the question of whether the defendants' termination of a contract was wrongful could not be resolved at the motion to dismiss phase due to factual disputes regarding performance. *Batteast Const. Co. v. Pub. Bldg. Comm'n of Chicago*, 195 *F. Supp. 2d* 1045 (N.D. Ill. 2001); Fed.Rule Civ.Proc. 12(b)(6)

The Federal Rules do not require a plaintiff to allege specific facts to "establish" each element of a claim for relief and the complaint only needs to inform the defendant of the charge against it by narrating the issues in question. *Petri v. Gatlin*, 997 *F. Supp.* 956, 965–66 (N.D. Ill. 1997). Further, the Northern District of Illinois denied the defendant's motion to dismiss for failure to state a claim and stated the following, "A line-by-line review of the relevant contracts, accompanied by "specific facts" demonstrating the plaintiffs' compliance with each and every provision of those contracts, is simply not necessary at this stage of the proceedings" *Petri v. Gatlin*, 997 *F. Supp.* 956, 965–66 (N.D. Ill. 1997) Regardless of the few exceptions defined in Fed. R. Civ. P. 9(b), fact-pleading is not required in federal court.

Further, federal courts from Illinois have repeatedly stated that a complaint is not required to plead legal theories that can be learned during discovery. See *Sokolova v. United Airlines, Inc.*, 18-CV-02576, 2019 WL 1572555, at *3 (N.D. Ill. Apr. 11, 2019). As stated by another federal court from Illinois:

> the legal theories associated with the counts of a complaint "are little more than non-dispositive labels subject to change as allegations yield to evidence over the course of discovery." *Volling*, 999 F. Supp. 2d at 997; *see also Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1004 (N.D. Ill. 2017) ("The precise legal theory, or theories, on which ... a claim may be premised, will be determined not at [the motion to dismiss] stage, but during discovery, in advance of summary judgment and/or at trial.") *Sokolova v. United Airlines, Inc.*, 18-CV-02576, 2019 WL 1572555, at *3 (N.D. Ill. Apr. 11, 2019)

JLL cites to *Allied Waste Transp., Inc. v. John Sexton Sand & Gravel Corp.*, 13 C 1029, 2016 *WL* 3443897, at 20 (N.D. Ill. June 23, 2016) as to the demonstration of damages, but fails to mention that the defendant's motion for summary judgment (as to the damages related to its breach of contract claims) was denied. Additionally, the Court in *Allied* stated the following, "Therefore, under Illinois law, it is necessary to show damages—not the specific amount, but rather that the plaintiff did, in fact, suffer some damages" quoting *Transp. & Transit Assocs., Inc. v. Morrison Knudsen Corp.*, 255 *F.3d* 397, 401 (7th Cir. 2001). Here, Plaintiffs repeatedly allege that the breaches by JLL caused them to incur damages. (Comp. ¶¶15,40,61, 65,68, 77,81 and 84; Am. Comp. ¶¶23, 24, 49, 71, 76, 77, 93, 94, 99, 101, 103 and 117).

In addition to those express allegations, Plaintiffs allege that "JLL planned a course of conduct for years so as to get the IntelliCommand platform, workers, materials, software, codes, etc. within its exclusive control and to "steal" it away from first PCI and then Greenstar." (Comp. ¶53; Am. Comp. ¶62) Such efforts included first getting PCI to spend tens of millions of dollars to develop the technology compatible with JLL's technology; to then not market it as agreed so

that PCI would lose substantial sums on its significant investment; then to agree to take on the PCI personnel involved with it and enter into an agreement whereby it gained a 65% interest in IntelliCommand and the related platform; then to keep Greenstar 'in the dark' as to what JLL was doing with the technology by not conducting Advisory Committee meetings, advising Greenstar who were the members of the IMT and/or providing monthly reports; then to advise Greenstar that notwithstanding the latest reports IntelliCommand was losing money; then to offer to buy the remaining 35% interest for nothing while not advising Greenstar that JLL was investing a substantial sum into technology and/or that it was forming a new technology company". _Id._ Again, such claims have been pled with adequate specificity.

Finally, Plaintiffs also properly allege that JLL used the IntelliCommand platform to develop its applications such as Corrigo and now denies same to decrease the value of the 35% interest in IntelliCommand that Greenstar is owed as well as the revenues to which Greenstar is entitled. The integration of IntelliCommand with Corrigo should have had a huge impact on the valuation of the business. However, the application of such requires a technological ability to determine what an appropriate apportionment would have been of the Corrigo net revenue to IntelliCommand and additional information from JLL that it refuses to provide. As the valuation procedures outlined in the Greenstar Agreement have not occurred properly (Am. Comp. , Ninth Count), JLL has committed yet another breach as well as fraud and JLL's motion to dismiss is premature. As JLL allegedly committed multiple material breaches of the Greenstar Agreement which resulted in damages to Greenstar, and require further investigation, JLL's motion to dismiss must be denied in its entirety.

**D. ACCOUNTINGS UNDER THE GREENSTAR AND PCI AGREEMENTS ARE WARRANTED**

The case cited by JLL for the proposition that the Plaintiffs are not entitled to an accounting actually establishes that an accounting is appropriate in this matter. In *Mann v. Kemper Financial Companies, Inc.*, *N.E.2d* 317, 327 (Ill. App. Ct. 1st Dist. 1992), the Court stated that, "(A)lthough equitable remedies are denied when there is an adequate remedy at law, there is an exception for when an accounting action is sought based upon a breach of a fiduciary duty so that a plaintiff may proceed with the action. *Id.*, citing (*People ex rel Hartigan v. Candy Club,* 149 *Ill.App.3d* at 501, 103 *Ill.Dec.* at 169, 501 *N.E.2d* at 190.)

In *Hartigan,* the Court overturned a lower court decision to dismiss the State's complaint, seeking, *inter alia*, to compel the estate of the decedent to provide an accounting regarding the assets of a club, which were allegedly converted by the decedent, and to compel their distribution to a charity or the State. *People ex rel Hartigan v. Candy Club*, 149 *Ill. App.3d* at 501, 103 *Ill. Dec.* at 169, 501 *N.E.2d* at 190.In overturning the lower Court's decision, the *Hartigan* Court held that, "although it is true, as defendant contends, that equitable remedies are denied when there is an adequate remedy at law, this court has recognized an exception in cases in which an accounting is sought based on a breach of a fiduciary duty. *Id.,* citing *Mayr v. Nelson Chesman & Co.*, 195 *Ill. App.* 587, 589 (Ill. App. Ct. 1915). The *Hartigan* court further held that the State's complaint alleged that "(the decedent) was a fiduciary of the Candy Club in that he "managed, operated, controlled, collected and distributed the Candy Club's money and funds." *People ex rel Hartigan v. Candy Club,* 149 *Ill.App.3d* at 501, 103 *Ill.Dec.* at 169, 501 *N.E.2d* at 191.

Similarly, in this matter, JLL was acting as a fiduciary for the funds that were to be collected and shared by JLL pursuant to the Greenstar Agreement as it is undisputed that JLL managed, operated, controlled and distributed the money and funds earned from the IntelliCommand Platform and software. (Am. Comp. ¶ 106) As such, it is submitted that a showing

21

that there is no adequate remedy at law is not necessary in order for Plaintiffs to obtain an accounting.

However, even if this Court determines that Plaintiffs must show that a legal remedy would be inadequate, Plaintiffs are still entitled to an accounting. In *ABM Marking, Inc. v. Zanasi S.R.L.*, 353 *F.3d* 541 (2003), a seller of ink for ink-jet printers commenced a breach of contract action against a seller of printers, for breach of the parties' oral distributorship agreement, whereby each party agreed to purchase the other party's product, and the ink seller would distribute the defendant's printers. In affirming the lower court's decision that the Defendant was entitled to an accounting, the Court, while acknowledging the *Mann* factors, nonetheless determined that there was no adequate legal remedy available because (Plaintiff) failed to keep records of the royalties owed. The Court stated that:

> The evidence at trial reveals a disturbing disparity between estimates of the royalties owed and an absence of solid evidence of the actual amount.[1] Additionally, the district court found that by failing to keep accurate records of royalties, ABM engaged in fraud. Given the lack of definite evidence and the fact that the lack of evidence is due to ABM's poor record-keeping, we agree with the district court and find that the court did not abuse its discretion in allowing for an accounting.

*ABM* is analogous to this matter. JLL has failed to provide accurate records to Plaintiffs as to the amount owed by JLL based on the use of Plaintiffs' Platform and software; Plaintiffs alleged that JLL defrauded them by withholding information as to revenues from the integration of IntelliCommand with other JLL technological offerings and JLL was covering it up by failing to conduct meetings, etc. (Am. Comp. ¶¶ 35, 55-58, 62, 98) Further, JLL withheld critical information

---

[1] In this case, the Plaintiff claimed royalties totaling approximately $138.00, whereas Defendant approximated royalties owed at $16,000.00.

from the appraiser. (Am. Comp., Ninth Count) For these reasons, it is respectfully submitted that

Plaintiffs are entitled to an accounting.

Additionally, Defendant's reliance on *Kempner Mobile Electronics Inc. v. Southwestern*

*Bell Mobile Systems*, 428 *F.3d* 706 (7th Cir. 2005) is misplaced. In *Kempner*, the Court in denying

the request for an accounting also indicated that:

> Kempner never pled a claim for accounting, but instead waited until receiving a
> verdict on liability to request an accounting. We find that this case is nothing more
> than a garden-variety contract dispute. Indeed, damages in this case are not
> speculative, and the amount of damages is neither difficult nor impossible to
> measure. Furthermore, all of the accounting information pertinent to Kempner's
> claims could and should have been revealed through discovery, and there is no
> showing that the "accounts between the parties" are of such a "complicated nature"
> that only a court of equity can satisfactorily unravel them. *Id.*

Similarly, the Defendant's reliance on *Melikhov v. Drab*, No. 16 C 9332, 2017 *WL* 3234808

at *7 (N.D. Ill. July 31, 2017) is similarly misplaced. In *Melikhov*, the Court in denying the claim

for an accounting held that:

> Only one case that Plaintiffs cite to support their claim for an accounting based on
> breach of contract demonstrates the type of complexity necessary to render an
> accounting appropriate. In *Billboard Publishing Company v. McCarahan*, the court
> found an accounting was necessary when there were nearly 200 separate contracts
> at issue, both oral and written, with varying terms of commission and
> discounts. 151 Ill. App. 227, 229 (Ill. App. Ct. 1909).

This is akin to the situation *sub judice.* In this matter, JLL is an entity that manages many

buildings with a total square footage of more than two billion (2,000,000,000) square feet. (Comp.

¶ 6 ; Am. Comp. ¶ 9 ).The dollars associated with its sales of Plaintiffs' platform and software

would be complex as it would be sold among many sectors (data centers, general offices, hotels,

manufacturing, retail, hospitals, warehouses, labs). (Comp.¶ 7; Am. Comp. ¶ 10   ) As such, this

is the type of "complexity" that would require an accounting.

In the alternative, as plead in the First Amended Complaint, Plaintiffs are entitled to audits. (Am. Comp. ¶ 107 )  Implied therein is that JLL needs to cooperate with respect thereto by providing the documentation necessary for Plaintiffs to be able to have full and complete audits performed.

## E. GOOD FAITH AND FAIR DEALING ARE SUBSUMED INTO BREACH OF CONTRACT CLAIM

It is well settled that "the obligation to deal in good faith is implied by Illinois law into every contract and breach of that duty is simply a breach of the underlying contract." *Batteast Const. Co. v. Pub. Bldg. Comm'n of Chicago*, 195 *F. Supp. 2d* 1045, 1051 (N.D. Ill. 2001) *quoting Industrial Specialty Chems., Inc. v. Cummins Engine Co. Inc.,* 902 *F.Supp.* 805, 811 (N.D.Ill.1995); *Banco Del Estado v. Navistar Int'l Transp. Corp.,* 942 *F.Supp.* 1176, 1179 (N.D.Ill.1996); *LaScola v. U.S. Sprint Comm.,* 946 *F.2d* 559, 565 (7th Cir.1991)

A cause of action for the breach of the covenant of good faith and fair dealing may be subsumed into a breach of contract claim. *Typpi v. PNC Bank, Nat'l Ass'n*, 2014 *WL* 296035, at *3 (N.D. Ill. Jan. 27, 2014) ("Here, because Plaintiff's breach of contract claim survives PNC's motion to dismiss, and he has claimed that PNC acted "arbitrarily and unfairly," his breach of the implied covenant of good faith and fair dealing claim also survives"); *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 2009 *WL* 1329217, at *6 (N.D. Ill. May 13, 2009), aff'd. 692 *F.3d* 580 (7th Cir. 2012); *Snap-On Inc. v. Ortiz*, 1999 *WL* 592194, at *13 (N.D. Ill. Aug. 3, 1999) ("The fact that a breach of the implied duty of good faith and fair dealing does not provide an independent claim does not render the claim meaningless. To the contrary, the duty is subsumed into the breach of contract claim"); c.f. *Stuart Park Assocs. Ltd. P'ship v. Ameritech Pension Tr.*, 846 *F. Supp.* 701, 714 (N.D. Ill. 1994) (dismissing claim for breach of covenant of good faith and fair dealing but acknowledging it is subsumed into breach of contract claim).

24

Here, in addition to an implied covenant of good faith and fair dealing, the PCI Agreement and the Greenstar Agreement expressly provide that JLL will treat PCI and Greenstar "based on the principle of fair and honest dealings at all times and in all ways." (Comp. ¶¶ 9, 24, 25, 33; Am. Comp. ¶¶ 13, 33, 34, 41, 42, 99)

## F.  SPECIFIC PERFORMANCE

Although Defendant asserts, pursuant to a federal case, that there is no independent cause of action for specific performance, numerous Illinois cases refer to it as a "cause of action" with distinct elements. See, e.g., *Happy R Sec., LLC v. Agri-Sources, LLC*, 988 *N.E.2d* 972, 981 (Ill.App.Ct. 2021) ("To state a cause of action for specific performance, the plaintiff must allege and prove the following elements: (1) the existence of a valid, binding and enforceable contract; (2) the compliance by plaintiff with the terms of his contract or the fact that he is ready, willing and able to perform his part of the contract; and (3) the failure or refusal by the defendant to perform his part of the contract"); *Ansonia Properties, LLC v. Vasilj*, 2015 *IL App (1st)* 133846-U, ¶ 23, as modified (June 4, 2015) (same); *Ladien v. Presence RHC Corp.,* 2017 *IL App (1st)* 152778-U, ¶ 22 (June 30, 2017); *Dodd v. Rotterman*, 330 Ill. 362, 370 (1928) (referring to "cause of action for specific performance"); *Baker v. Puffer*, 299 *Ill*. 486, 490 (1921) (same).  Nonetheless, as stated in *Lagen v. United Cont'l Holdings, Inc.*, 920 *F. Supp.* 912, 918–19 (N.D. Ill. 2013):

> Count IV of Plaintiff's Complaint purports to state a claim for specific performance. In its Motion to Dismiss, Defendants argue that this claim must be dismissed because specific performance is not an independent cause of action. Plaintiff responds clarifying that Count IV is not intended to be an independent cause of action, but instead is only an equitable remedy sought for Plaintiff's breach of contract claim. The Court accepts Plaintiff's explanation and finds Plaintiff's request for specific performance as a form of relief permissible. However, the Court points out that Defendants are correct in their contention that specific performance is not an independent cause of action, and thus construes Plaintiff's Amended Complaint to consist of only three causes of action, two of which the Court is dismissing, leaving only Plaintiff's breach of contract claim. Id.

25

Hence, it is respectfully submitted that, even if this court rules that specific performance is not an independent cause of action, that Plaintiff be permitted to seek this relief as part of its breach of contract claim.

### G.  BAD FAITH BREACH OF CONTRACT/FRAUD

While generally punitive damages are not recoverable in connection with actions for breach of contract, Illinois law expressly permits recovery of punitive damages for bad faith breach of contract where the facts upon which the claim for breach of contract is based are also the basis of an independent tort, such as fraud. *In Bank of Illinois in Mt. Vernon v. Bill's King City Stationery, Inc.,* 198 *Ill. App. 3d* 434, 436–37 (1990), the court stated:

> Punitive damages may be awarded in cases of fraud, actual malice, deliberate violence or oppression, when the defendant acts willfully, or with wanton disregard for the rights of others. Punitive damages are in the nature of punishment, designed to deter the defendant and others from such conduct in the future.

Where the breach constitutes an independent tort for which punitive damages are recoverable, they are recoverable in a breach of contract case. *Morrow v. L.A. Goldschmidt Associates, Inc.,* 112 *Ill.2d* 87 (1986); *Skokin v. Blackman, Kallick and Co.,* 184 *Ill.App.3d* 873 (1989); *Salvator v. Admiral Merchants Motor Freight,* 156 *Ill.App.3d* 930 (1987); *Wallace v. Prudential Insurance Co.,* 12 *Ill.App.3d* 623, 629–30 (1973); *Restatement (Second) of Contracts* § 355 (1977).

In order to support the existence of an independent tort, a plaintiff need only allege facts which would bring its claim for punitive damages within a recognized tort theory. *Illinois Sterling, Inc. v. KDI Corp.,* 33 *Ill.App.3d* 666 (1975); *Bank of Illinois in Mt. Vernon v. Bill's King City Stationery, Inc.,* 198 *Ill. App. 3d* at 436–37 (other citations omitted); *Cox v. Doctor's Assocs., Inc.,* 245 *Ill. App. 3d* 186, 220 (1993) ("Based on the evidence, we conclude that the jury could find that the willful and wanton fraudulent misrepresentation was extraneous to the breach, amounting to an independent tort for which punitive damages could be awarded"); *3Com Corp. v. Elecs.*

*Recovery Specialists, Inc.*, 104 *F. Supp. 2d* 932, 943 (N.D. Ill. 2000) ("[P]laintiff properly has alleged that 'the conduct causing the breach' of contract may also be "a tort for which punitive damages are recoverable"); *Miyano Mach. USA, Inc. v. Zonar*, 1994 *WL* 233649, at \*7 (N.D. Ill. May 23, 1994) ("Illinois does, however, recognize a cause of action in tort arising out of a breach of contract if the conduct constitutes an independent tort"); *Sharpe v. Jefferson Distrib. Co.*, 1998 *WL* 786397, at \*3 (N.D. Ill. Nov. 6, 1998) ("[Plaintiff has adequately alleged conduct on behalf of McMillan that satisfies this exception to the general prohibition of punitive damages in a breach of contract claim").

The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiffs reasonable reliance on the truth of the statement; and (5) plaintiffs damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co., Ltd.*, 174 *Ill.2d* 482, 496 (1997). (See Am. Comp. ¶98) To satisfy the causation element of a fraud claim, the plaintiff must prove that his injuries were proximately caused by the defendant's misrepresentations. *City of Chicago v. Michigan Beach Housing Co-op*, 297 *Ill.App.3d* 317, 326 (1st Dist. 1998). To prove a causal nexus between the defendant's fraud and his own loss, a plaintiff must show simply that his damage would not have occurred but for the fraud: "That is, the relevant inquiry is whether the harm would have occurred absent the defendant's conduct." *Price v. Philip Morris, Inc.*, 219 *Ill.2d* 182, 269-70 (2005).

Here, it is expressly alleged in the Amended Complaint that JLL defrauded Greenstar and PCI with respect to its use of the IntelliCommand platform with respect to other technological offerings in that it failed to report substantial revenues attributable at least in part to that platform. (Am. Comp. ¶¶ 35, 55-58, 62, 98) Further, that JLL intentionally withheld information as to same

from the appraiser which caused the appraiser to substantially underreport the value. (Am. Comp., Ninth Count) Further, both the Complaint and Amended Complaint allege that JLL planned to essentially steal PCI's and then JLL's platform and software for years. (Comp. ¶ 53 ; Am. Comp. ¶ 62). Therefore, Plaintiffs have alleged fraud on the part of JLL which would entitle them to punitive damages.

## **CONCLUSION**

For the reasons set forth herein, it is respectfully submitted that JLL's motion to dismiss should be denied in its entirety.

DREIFUSS BONACCI & PARKER, PC
Attorneys for Plaintiffs

By:   *David C. Dreifuss*